**Lisa J. DUNN, Petitioner–Appellee/Cross–Appellant,**

v.

**Raymond ROBERTS, Respondent–Appellant/Cross–Appellee.**

**Nos. 91–3232, 91–3233.**

United States Court of Appeals, Tenth Circuit.

May 1, 1992.

---

David J. Gottlieb, Kansas Defender Project, University of Kansas, Lawrence, Kansas (Jessica Kunen, Director, Appellate Defender Office, Topeka, Kan. with him on the briefs), for petitioner-appellee/cross-appellant.

John K. Bork, Asst. Atty. Gen., Topeka, Kan., for respondent-appellant/cross-appellee.

Before McKAY, Chief Judge, BARRETT and BRORBY, Circuit Judges.

McKAY, Chief Judge.

This cross-appeal involves a challenge to a District Court judgment granting Petitioner habeas corpus relief from a state conviction. Petitioner and Respondent raise several issues on appeal. We need only address one of these issues, however, because we find it dispositive of whether Petitioner is entitled to a new trial. The sole question we address is whether the state trial court denied Petitioner due process when it refused Petitioner's request for funds to employ a psychiatric expert to assist in her defense.

Petitioner is an inmate at the Kansas Correctional Institute. She was convicted as an aider and abettor in 1985 of two

counts of felony murder, two counts of aggravated kidnapping, one count of aggravated battery on a law enforcement officer, one count of aggravated robbery, and one count of aggravated battery. The events leading to Petitioner's conviction are stated in detail in both the Kansas Supreme Court opinion, *State v. Dunn*, 243 Kan. 414, 758 P.2d 718 (1988), and the District Court opinion, *Dunn v. Roberts*, 768 F.Supp. 1442 (D.Kan.1991), and will be summarized briefly here.

Petitioner was eighteen years old when she met Daniel Remeta in Michigan in December of 1984. In January of 1985, Daniel Remeta, Petitioner, and another individual decided to travel to Florida. Before leaving Michigan, Petitioner took a .357 magnum pistol from her father's gun collection at Daniel Remeta's request.

According to Petitioner's trial testimony, she first became aware of Daniel Remeta's prison record and cruel nature during the drive to Florida. Petitioner stated that when she expressed a desire to return home to Michigan, Daniel Remeta threatened her with the .357 magnum. Petitioner testified that, as the trio continued their travels from Florida to Kansas, Daniel Remeta repeatedly threatened to harm Petitioner or her family if she left him. Daniel Remeta testified that Petitioner had no choice regarding her whereabouts and affirmed that he would have carried out his threats had Petitioner attempted to leave him. Petitioner testified further that Daniel Remeta's erratic and violent behavior intensified and he exerted more and more control over her as the trip continued.

On February 13, 1985, the trio picked up a hitchhiker north of Wichita, Kansas. Shortly thereafter, Daniel Remeta verbally threatened the hitchhiker and fired shots out of the car window. Near Levant, Kansas, the group was stopped by a sheriff driving a patrol car. Daniel Remeta exited his vehicle and shot the sheriff a number of times.

The group then drove to a grain elevator in Levant. At the grain elevator, Daniel Remeta forced two individuals into the back of a pickup truck at gunpoint. Daniel Remeta also shot and wounded another individual who was attempting to call the police. The group then drove in the pickup truck to a point near Colby, Kansas. Here Daniel Remeta shot the two hostages with the .357 magnum and left their bodies by the side of the road. Shortly thereafter, the group was captured after a gun battle. Petitioner was charged with a number of crimes relating to the events discussed above.

Prior to trial, Petitioner moved the court, pursuant to K.S.A. 22–4508[1], for $1800 to employ a psychological expert to assist in developing her defense. At the hearing, Petitioner's counsel presented the testimony of a jail chaplain who had spent approximately fourteen hours talking with Petitioner. The chaplain testified that Petitioner had told him that Daniel Remeta had threatened her with a gun, had choked her and had repeatedly threatened to kill her family if she left him or didn't do what he wanted her to do. *See* Transcript of Proceedings, Vol. IV, at 8–9.

Petitioner's counsel then discussed statements Daniel Remeta had made to the media regarding his abusive treatment of Petitioner. Petitioner's counsel related Daniel Remeta's admissions that he had threatened to kill Petitioner many times, that he had subjected her to Russian Roulette with the .357 magnum, and that he had advised her that her family or other innocent parties would be in danger if she contemplated leaving him. *See* Transcript of Proceedings, Vol. IV, at 13.

Petitioner's counsel stated that he had discussed the case with both a Michigan psychologist who had evaluated Daniel Remeta and a forensic psychiatrist from the Menninger Foundation. *See* Transcript of Proceedings, Vol. IV, at 14–15. Counsel said that both had suggested he investigate whether Petitioner suffered from battered

---

**1.** This statute directs the trial court to authorize defense counsel to obtain expert services for an indigent defendant at the state's expense if the court finds such services necessary to an adequate defense.

woman's syndrome and dissociative response when she was with Daniel Remeta. *See id.* Counsel related his belief that such evidence was relevant to Petitioner's mental state at the time the crimes were committed. *See* Transcript of Proceedings, Vol. IV, at 15–16. He explained that such evidence would be important because the state's case cast Petitioner as an aider and abettor of Daniel Remeta's crimes and that specific intent to assist, rather than mere presence, was a necessary element of the crime of aiding and abetting. *See id.* Counsel stated that he was not competent to investigate and develop such evidence. *See* Transcript of Proceedings, Vol. IV, at 14.

In requesting the funds, Petitioner's counsel explicitly stated that the assistance sought did not relate to the defense of compulsion but, rather, lack of intent. *See* Transcript of Proceedings, Vol. IV, at 18. Counsel then invoked the United States Supreme Court case of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). He said:

> The issue there was whether the constitution requires the indigent defendant to have access to a psychiatric examination and assistance to provide effective defense on a mental condition when sanity is in question. I believe we can put in "mental state" is in question. It's definitely in question in this matter, Your Honor.
>
> . . . .
>
> The ... mental state of my client has been made relevant because they alleged that she was an intentional active participant in this matter by aiding and abetting. I believe we've shown the threshold showing that mental state is a significant factor at trial in this matter.

Transcript of Proceedings, Vol. IV, at 20. The trial court rejected Petitioner's request, stating basically that Petitioner would have to convince the jury of her lack of intent without the assistance of an expert. *See* Transcript of Proceedings, Vol. IV, at 24–25. Petitioner renewed her request twice more, but the trial court denied each motion.

At trial, witnesses for the state and the defense offered conflicting evidence concerning Petitioner's participation in the crimes. None of the witnesses identified Petitioner as having a weapon or personally engaging in violence at any time. The only evidence offered of any direct participation by Petitioner was the testimony of four witnesses who said they saw Petitioner or someone with Petitioner's hair color driving the pickup after the elevator robbery. Daniel Remeta, the hitchhiker, and Petitioner all testified that Petitioner did not drive the truck. Another witness testified that she had seen another member of the group driving the truck. Thus, the State's principal arguments in support if its aiding and abetting theory relied heavily on Petitioner's presence with Daniel Remeta at the time the crimes were committed.

The jury found Petitioner guilty of aiding and abetting Daniel Remeta's crimes pursuant to the following instruction:

> A person who, either, before or during its commission, intentionally aids or abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime.

Record, Vol. V, Kansas Vol. II, at 83. Petitioner was originally sentenced to four consecutive terms of 15 years to life. These terms were later modified to be served concurrently.

On direct appeal to the Kansas Supreme Court, Petitioner contended, in pertinent part, that the trial court's refusal to provide funds for a forensic psychiatrist violated her right to due process under *Ake v. Oklahoma.* The Kansas Supreme Court affirmed Petitioner's conviction, however. That court, in relevant part, determined that Petitioner could not have made a sufficient showing to the trial court that her mental condition would be a significant issue at trial as required by *Ake v. Oklahoma.* Thus, it rejected Petitioner's due process contention.

The Kansas Supreme Court's determination on this issue was inextricably

linked to its conclusion that Petitioner was not entitled to raise the affirmative defense of compulsion. The Kansas Supreme Court noted that the Petitioner could not avail herself of a compulsion defense unless she made a threshold showing that the compulsion was continuous and that there was no reasonable opportunity to escape the compulsion without committing the crime. The Kansas Supreme Court found that Petitioner had numerous opportunities to escape Daniel Remeta and, thus, could not invoke a compulsion defense.[2] The Kansas Supreme Court seemed to reason that because the defense of compulsion was unavailable to Petitioner, the evidence Petitioner sought to develop using an expert regarding battered woman's syndrome was irrelevant to her case. Thus, the Kansas Supreme Court determined, Petitioner had not made a sufficient showing that her mental condition would be a significant issue at trial.

Petitioner filed for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254(d). The District Court granted the writ after determining, in relevant part, that the state trial court erred in refusing Petitioner's request for funds for expert services. The District Court determined that Petitioner had sufficiently shown the trial court that her mental condition would be a significant issue at trial and Petitioner was unable to effectively present her defense without access to expert services. Thus, the District Court concluded that the trial court's refusal of Petitioner's motion resulted in a deprivation of due process and granted Petitioner a new trial. The state now challenges the District Court's disposition of this issue.

When the state brings criminal charges against an indigent defendant, it must take steps to insure that the accused has a meaningful chance to present her defense. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While the state need not provide the indigent with all the tools the wealthy may buy, it must provide the defendant with the "basic tools of an adequate defense." *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court identified as one of these "basic tools" the appointment of a psychiatric expert when a defendant makes a threshold showing that her mental condition at the time of an offense is likely to be a "significant factor" at trial. *See Ake*, 470 U.S. at 83, 105 S.Ct. at 1096. In such a case, denying access to the assistance of a psychiatric expert to perform an examination relevant to defense issues and to assist in developing the defense would be a deprivation of due process. *See United States v. Sloan*, 776 F.2d 926, 929 (10th Cir.1985).

**2.** Respondent argues that the Kansas Supreme Court's factual findings on this issue are entitled to a presumption of correctness in the absence of any of the enumerated exceptions listed in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that in a federal habeas proceeding "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct" unless any of eight exceptions applies. Respondent correctly notes that the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact. *See Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). We agree that the District Court was remiss in its failure to discuss 2254(d) when disagreeing with the Kansas Supreme Court's fact findings on the compulsion issue. In *Sumner v. Mata* the United States Supreme Court held that if a federal court concludes that the presumption of correctness does not control, it must provide a written explanation of the reasoning that led it to conclude that one or more of the first seven factors listed in § 2254(d) were present, or the reasoning which led it to conclude that the state finding was not fairly supported by the record. *Sumner*, 449 U.S. at 551, 101 S.Ct. at 771. Thus, the statute requires the federal courts "to face up to any disagreement as to the facts and to defer to the state court unless one of the factors listed in § 2254(d) is found." *Sumner v. Mata*, 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982). We need not remand to the District Court for a § 2254(d) determination, however, because the Kansas Supreme Court's factual findings on the issue of compulsion have no bearing on our resolution of this appeal. Those findings were directed at a determination of whether the psychiatric testimony sought would have been relevant to an affirmative defense. Our focus, on the other hand, is on Petitioner's attempt to develop evidence tending to rebut an inference of intent, a necessary element of the crime of aiding and abetting.

■ "In order for a defendant's mental state to become a substantial threshold issue, the showing must be clear and genuine, one that constitutes a 'close' question which may well be decided one way or the other." *Cartwright v. Maynard*, 802 F.2d 1203, 1211 (10th Cir.1986). Thus, our focus is on whether Petitioner made a sufficient showing to the trial court that her mental condition at the time of the crimes would be a significant factor at trial. Our determination of this issue necessarily involves a review of the information before the state trial judge when he denied Petitioner's motion for funds to secure a psychiatric expert. After a close examination of the record, we agree with the District Court that Petitioner's showing was "thorough and ample to establish the requisite close question regarding the defendant's mental condition." *Dunn v. Roberts*, 768 F.Supp. 1442, 1448 (D.Kan.1991).

The record indicates that the state trial judge was made aware in general terms of Daniel Remeta's threats against and physical abuse of Petitioner and that evidence of battered woman's syndrome would likely have bearing on whether Petitioner had the state of mind necessary to commit the crime of aiding and abetting. Petitioner's counsel explained clearly that the state's case against Petitioner rested heavily on an aiding and abetting theory; that specific intent to assist, rather than mere presence, is a necessary element of the crime of aiding and abetting; that Petitioner's case rested on her ability to show that she lacked the requisite intent; and that Petitioner could not develop an effective rebuttal of that element without the assistance of an expert. We conclude that Petitioner made a compelling showing that her mental state would be a central issue at trial. Given the facts before the state trial judge and the defense counsel's explanation for requesting expert assistance, we conclude the state trial court should have known that a refusal of Petitioner's request for expert assistance would deny Petitioner an adequate opportunity to prepare and present her defense.

■ We further conclude that the denial of expert assistance precluded Petitioner from presenting an effective defense. Petitioner was convicted pursuant to Kansas' aiding and abetting statute.[3] In Kansas, specific intent to further an offense is a necessary element of the crime of aiding and abetting. "A person is criminally responsible for a crime committed by others if that person *intentionally* aids and abets the others in the commission of the crime." *State v. McDaniel*, 228 Kan. 172, 612 P.2d 1231, 1238 (1980) (emphasis in original). "Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider or abettor." *Id.* 612 P.2d at 1237–38. Because specific intent is an essential element of the offense for which Petitioner was tried, the state was required to prove beyond a reasonable doubt that Petitioner entertained a specific mental objective to assist Daniel Remeta in committing the crimes. If the jury found that Petitioner, for *any* reason, did not entertain that particular mental state, it could not convict Petitioner of that crime. Thus, Petitioner's mental condition was squarely at issue in this case.

The state's theory of aiding and abetting rested heavily on Petitioner's presence with Daniel Remeta at the time the crimes were committed. From Petitioner's presence, the jury was asked to infer that Petitioner specifically intended to participate in Daniel Remeta's crimes. In light of the state's overwhelming emphasis on Petitioner's presence, it is clear that an expert would have aided Petitioner in her defense by supporting her assertion that she did not have the required specific intent.

The mystery in this case, as in all battered woman cases, is why Petitioner remained with Daniel Remeta despite repeated abuse. An expert could have explained to the jury the nature of battered woman's syndrome and given an opinion on

---

**3.** That statute provides in part, "(1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." Kan.Stat.Ann. § 21–3205 (1988).

**314**

whether Petitioner suffered from the syndrome. This is an area where expert opinion is particularly useful and oftentimes necessary to interpret for the jury a situation beyond average experience and common understanding. The effect of the expert testimony would be to explain why a defendant suffering from the battered woman syndrome wouldn't leave her batterer. As the Kansas Supreme Court stated:

> Expert testimony on the battered woman syndrome would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time. The expert evidence would counter any 'common sense' conclusions by the jury that if the beatings were really that bad the woman would have left her [batterer] much earlier.

*State v. Hodges*, 239 Kan. 63, 716 P.2d 563, 570 (1986), *overruled on other grounds*, *State v. Stewart*, 243 Kan. 639, 763 P.2d 572, 579 (1988). Such evidence is introduced to help the jury understand why a battered woman is psychologically unable to leave the battering relationship and why she lives in high anxiety of fear of the batterer. *See Hodges*, 716 P.2d at 570. Thus, such evidence could have provided an alternative reason for Petitioner's continued presence with Daniel Remeta. We agree with the District Court that this evidence should have been "considered by the jury in evaluating whether Petitioner had the requisite intent to participate in the crimes of which she was charged." *Dunn v. Roberts*, 768 F.Supp. 1442, 1448 (D.Kan. 1991). This would not be the first case in which psychiatric testimony was considered crucial to the issue of intent. *See, e.g.*, *United States v. Austin*, 933 F.2d 833, 841 (10th Cir.1991); *Hughes v. Mathews*, 576 F.2d 1250, 1256–57 (7th Cir.1978); *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir.1977); *United States v. Demma*, 523 F.2d 981, 986–87 (9th Cir.1975); *United States v. Brawner*, 471 F.2d 969, 998–1002 (D.C.Cir.1972). By refusing Petitioner the funds for expert assistance, the state trial court effectively prohibited Petitioner from presenting relevant information directly bearing on an essential element of the crime of which she was convicted. Without that assistance, Petitioner was deprived of the fair trial due process demands. *See United States v. Sloan*, 776 F.2d 926, 929 (10th Cir.1985).

For the foregoing reasons, we conclude that Petitioner is entitled to a new trial with the assistance of an expert in the preparation and presentation of her defense. Accordingly, we AFFIRM the judgment of the District Court that Petitioner be released from custody unless, within 120 days of the issuance of this order, a new trial outside of Thomas County, Kansas, is commenced.