**UNITED STATES of America, Appellee,**

**v.**

**Kevin Patrick SMITH, Appellant.**

**No. 362, Docket 92–1243.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 3, 1993.

Decided March 1, 1993.

Denis J. McInerney, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., for the S.D. of N.Y., Richard B. Zabel, Paul G. Gardephe, Asst. U.S. Attys., of counsel), for appellee.

Vivian Shevitz, New York City (Georgia J. Hinde, New York City, of counsel), for appellant.

Before: LUMBARD, WINTER, and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Kevin Patrick Smith appeals from a judgment entered on a jury verdict in the Southern District of New York, Metzner, J., convicting him of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371, bank robbery, § 2113(a), armed bank robbery, § 2113(d), using and carrying a firearm during and in relation to a bank robbery, § 924(c), and possessing a firearm after having been convicted of a felony, § 922(g).

Smith argues that: (1) the court erred in denying his request pursuant to 18 U.S.C. § 3006A(e)(1) for the appointment of a psychiatrist; (2) the government's summation so prejudiced the jury as to deprive him of a fair trial, and (3) the court lacked jurisdiction because § 2113 violates the Tenth Amendment. Because the denial of the expert psychiatrist was harmless error, and Smith's other two claims are without merit, we affirm.[1]

On March 7, 1990 Smith and David Hammerstone went to 845 Third Avenue in mid-town Manhattan, the site of the federally insured Bank Leumi. Smith was armed with a .45 caliber handgun and a hunting knife, Hammerstone with a .30 caliber rifle. Hammerstone guarded the bank officials in the front of the bank. Smith approached the teller Coreen Debarros and announced "this is a stickup." Pointing his gun, he demanded that she fill a duffle bag with money. He ordered her to hurry, threatened to shoot her if she touched the alarm, and instructed her to give him only large bills.

Debarros testified that Smith was screaming and yelling and appeared angry. A security guard, Hardatt Kumar, testified that Smith's actions were threatening. Hammerstone, on the other hand, claimed that Smith appeared nervous. Debarros and Kumar both testified that Hammerstone had his back turned to Smith while he was guarding the bank officials. Hammerstone, however, claimed his back was not turned for more than a few seconds.

Smith and Hammerstone left the bank with $11,000. They immediately hailed a cab, but were apprehended when Kumar and the police chased them down on foot when their cab was delayed in traffic. Kumar and three New York City police officers testified that Smith resisted arrest and that during the struggle he was trying to reach his waistband where his handgun was later found. Hammerstone disputed this account, claiming that Smith peacefully submitted to arrest.

The police seized a .45 caliber handgun, two clips of ammunition, and a long hunting knife from Smith. The police officers testified that the handgun was loaded. Again Hammerstone disputed this account, testifying that the handgun was not loaded. The officers also recovered Smith's wallet which contained several slips of paper. The model number of the handgun was written on one slip, and the address of Jimmy Cullihan was written on another. The police also found a loaded rifle strapped to Hammerstone's body.

Hammerston confessed to FBI agent Douglas K. Miller that: (1) he and Smith

---

1. Smith also requests that the trial be assigned to a different judge if the case is remanded.

had planned the robbery and had "cased" the Bank Leumi the night before; (2) they had met at their friend Jimmy Cullihan's apartment the morning of the robbery; (3) Smith owned the handgun and brought it to Cullihan's; (4) the handgun was loaded during the robbery; and (5) the rifle was unloaded until just before they entered the bank.

Two months later, Hammerstone pleaded guilty to bank robbery and weapons possession. Before his sentencing, Hammerstone wrote a letter to the court and to Smith's attorney claiming that he forced Smith to commit the robbery.

Before trial,[2] Smith's counsel moved, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), for the appointment of a psychiatrist to examine Smith and assist in the development of a duress defense. Judge Metzner denied the motion, reasoning that even if the expert testified to Smith's unusual susceptibility to coercion, such testimony would be irrelevant and inadmissible under the well-founded fear test for duress.

At trial, Hammerstone testified that he forced Smith to rob the bank. He stated that in December 1986 they discussed robbing a bank and on one occasion they had practiced shooting, including the handgun used in the robbery. The night before the robbery, they again discussed robbing a bank, and Smith laughed at the suggestion.

Hammerstone claims he went to the apartment of Smith's mother the next morning, thinking they were going to rob a bank. Smith answered the door wearing only his underwear and told Hammerstone that he knew nothing about the robbery and was not interested. Hammerstone then forced Smith to commit the robbery by threatening Smith with the rifle and threatening to kill Smith's mother. He gave Smith the pistol and put two clips of ammunition in Smith's pocket. Finally, he claims he lied to the FBI about Smith's role

in the robbery to avoid being charged with kidnapping.

A jury convicted Smith on all five counts. At sentencing, he requested a downward departure pursuant to Sentencing Guideline § 5k2.12 which provides: "If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range." Judge Metzner denied this request and sentenced him to 120 months incarceration.

### A. Smith's Request for a Psychiatric Expert

 Although we agree with Judge Metzner that duress requires an objective showing, we believe Smith's request for a psychiatrist should have been granted. To establish duress, a defendant must show "that the force or threat was of such a nature as to induce a *well-founded* fear in a person of immediate and impending death or serious bodily harm to himself or others." *Smith*, 939 F.2d at 10 n. 1 (emphasis added); *see also United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Villegas*, 899 F.2d 1324, 1344 (2d Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990).[3]

The well-founded fear test requires an objective showing that a reasonable person would have been coerced as a result of Hammerstone's threats. Thus in *Villegas*, we excluded evidence of duress without considering the sincerity of defendant's fear because the facts alleged "fell far short of the [well-founded fear] standard." *Id.; see also United States v. Johnson*, 956 F.2d 894, 898 (9th Cir.1992) (well-founded fear requirement is in harmony with the Model Penal Code requirement which rec-

---

**2.** Smith had been tried for the same offenses earlier, but we reversed his conviction because of the court's failure to instruct the jury on all elements of the crimes for which Smith was tried. *See United States v. Smith*, 939 F.2d 9 (2d Cir.1991).

**3.** We are not persuaded otherwise by *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753 (2d Cir.1967), cited by Smith, which deals with duress in the contract context.

ognizes duress in the use of unlawful force "that a person of reasonable firmness in his situation would have been unable to resist.") (quoting American Law Institute, *Model Penal Code* § 2.09(i) (1985)).

Smith requested authorization for the appointment of a psychiatrist pursuant to § 3006A(e)(1), which provides:

Counsel for a person who is financially unable to obtain investigative, *expert or other services necessary for adequate representation* may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that *the services are necessary* ... the court ... shall authorize counsel to obtain the services.

(emphasis added). This section "must not be emasculated by niggardly or inappropriate constructions." *United States v. Durant*, 545 F.2d 823, 827 (2d Cir.1976). We have held that:

The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them.

*Id.* (quoting *United States v. Bass*, 477 F.2d 723, 725 (9th Cir.1973)); *see also United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir.1990).

We do not agree with Judge Metzner's denial of Smith's request for a psychiatrist on the ground that testimony as to Smith's unusual susceptibility to coercion was irrelevant and inadmissible. A psychiatrist might have testified to other issues at trial and sentencing, including that Smith's behavior was not inconsistent with his being under duress. An expert might have explained that Smith's extreme fear caused him to act aggressively and angrily in the bank and to resist arrest. Fear may also have prevented him from using the loaded gun against Hammerstone. Explaining this behavior might have bolstered the credibility of his duress claim, which was relevant to the jury's determination. *See Johnson*, 956 F.2d at 899 (admissibility of expert testimony on the psychology of human behavior which "buttressed [defendant's] contention of duress"); *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir.1977) (psychiatrist may testify as to the voluntariness of defendant's action in a case involving duress), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

At sentencing, expert testimony would also be relevant because § 5k2.12 of the guidelines allows a downward departure for an incomplete defense of duress. Testimony as to Smith's unusual susceptibility to coercion would be relevant in determining whether he had an honest but unreasonable belief that he was being coerced. In admitting similar testimony at sentencing, the *Johnson* court reasoned that:

The court is not confined to the classical definition of duress, but should properly consider the individual before the court and her particular vulnerability. In this regard, the testimony of [the defendant's] expert is of special interest.

956 F.2d at 899; *see also United States v. Cheape*, 889 F.2d 477, 480 (3d Cir.1989) (§ 5k2.12 provides a broader standard of coercion than that applied at trial).

We believe the refusal to authorize the appointment of a psychiatrist was harmless error.[4] The Supreme Court has stated:

The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the

---

4. We see no need to consider whether harmless-error analysis is applicable when the failure to appoint a psychiatrist is a violation of due process. Due process is not violated in this case because the psychiatric testimony involved concerns the credibility of Smith's duress claim, rather than testimony as to Smith's capacity to form the intent necessary to commit a crime.

*See Ake v. Oklahoma*, 470 U.S. 68, 70, 105 S.Ct. 1087, 1089, 84 L.Ed.2d 53 (1985) (due process requires a psychiatrist for an indigent defendant who is claiming insanity); *United States v. Sloan*, 776 F.2d 926, 928 (10th Cir.1985) (a psychiatrist is required under *Ake* to "assist in the preparation of the defense of lack of capacity to form specific intent").

underlying fairness of the trial rather than the virtually inevitable presence of immaterial error.

*Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986) (citations omitted). Moreover, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Id.* at 579, 106 S.Ct. at 3106.

■ Harmless-error analysis applies to errors which may "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). It does not, however, apply to "structural defects in the constitution of the trial mechanism" which affect the entire conduct of the trial because they are the basic protections without which " 'a criminal trial cannot reliably serve its function as vehicle for determination of guilt or innocence.' " *Id.* at ——, 111 S.Ct. at 1265 (quoting *Rose,* 478 U.S. at 577, 106 S.Ct. at 3105).

The denial of a psychiatrist deprived Smith of the opportunity to develop evidence which might have shown (1) that his actions were consistent with his duress defense and (2) that he was unusually susceptible to coercion for sentencing. Because this ruling restricted the evidence available to Smith, we assess its magnitude in light of the other evidence at trial.

We believe that the fairness of the trial was not undermined. This conclusion is supported by our application of harmless-error analysis in similar situations. We have held that both the prosecution's withholding of *Brady* materials and the wrongful exclusion of evidence are subject to harmless-error analysis. *See Tinsley v. Kuhlmann,* 973 F.2d 163, 166 (2d Cir.1992) (*Brady* violation subject to harmless-error analysis) (citing *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993); *United States v. Blackwell,* 853 F.2d 86, 88 (2d Cir.1988) (exclusion of testimony that defendant had never been arrested or convicted of a crime deemed harmless error); *United States v. Puglisi,* 790 F.2d 240, 243 (2d Cir.) (refusal to admit co-defendant's exculpatory statement is harmless error), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).

The ruling in this case was harmless error. An error is harmless unless " 'there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the proceeding would have been different' " *Tinsley,* 973 F.2d at 166 (quoting *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383); *see also United States v. Salerno,* 937 F.2d 797, 808 (2d Cir.1991) (applying same standard to wrongful exclusion of evidence), *petition for rh'g in banc granted on other grounds,* No. 88–1464 (Nov. 25, 1992). "A reasonable probability in this context means a probability sufficient to undermine confidence in the outcome, one that might make the difference between a verdict of guilty and innocence." *Tinsley,* 973 F.2d at 166 (citations omitted).

The abundant evidence of Smith's guilt ensured that the availability of a psychiatric expert would not have altered either the verdict or his sentence. Smith's wallet contained slips of paper describing the handgun that Hammerstone claimed he gave Smith the morning of the robbery and Cullihan's address, which Hammerstone told the FBI was their meeting place the same morning. Moreover, Hammerstone's credibility was seriously undermined by his prior inconsistent statements to the FBI and the testimony of several witnesses who contradicted his testimony. Finally, it is undisputed that prior to the robbery Smith and Hammerstone had discussed robbing a bank and had practiced shooting.

Thus, we believe expert testimony that Smith's actions were consistent with his duress claim would not have changed the jury's decision. Similarly, testimony that Smith was unusually susceptible to coercion would not have resulted in a downward departure pursuant to § 5k2.12 be-

cause the same evidence indicates that Smith was not coerced.

### B. *The Government's Summation*

 Smith's claim in his *pro se* supplemental brief that the government's summation deprived him of a fair trial is without merit. The prosecutor stated:

> Consider, also, the relationship between Smith and Hammerstone. Smith knows all about Hammerstone. Mr. Hammerstone tells you he's such a violent guy. He does all these bad things. Consider the following possibility. Is it possible that his closest friend may be aware of some things that Hammerstone doesn't want anyone to know? And maybe, it is possible that.... One of the reasons Mr. Hammerstone is doing this is to appease Mr. Smith so that nobody is notified about some of the other violent things he's done for which he hasn't been even found [guilty] or convicted or sentenced.

He also stated that Smith's actions were those of a *skillful bank robber* and not those of an unwilling victim of coercion.

These statements did not deprive Smith of due process. Despite Smith's claims to the contrary, neither statement leaves the impression that the government was referring to matters beyond the record. The first statement properly focused the jury's attention on Hammerstone's motivation and mérely suggested one possible motivation based on Hammerstone's own testimony concerning his extensive criminal history, and the second statement was based on Smith's actions during the robbery.

### C. *Federal Jurisdiction*

 Finally, Smith's other *pro se* argument that the court lacked jurisdiction over the bank robbery charges because 18 U.S.C. § 2113 violates the Tenth Amendment is also without merit. As Justice Holmes explained in *Westfall v. United States*, 274 U.S. 256, 258, 47 S.Ct. 629, 629, 71 L.Ed. 1036 (1927):

> Of course an act may be criminal under the laws of both jurisdictions. And if a state bank chooses to come into the Sys-

tem created by the United States, the United States may punish acts injurious to the System, although done to a corporation that the State is also entitled to protect. The general proposition is too plain to need more than statement.

(citation omitted). Thus, we agree with other courts which have summarily rejected this challenge to 18 U.S.C. § 2113. *See, e.g., United States v. Adams*, 555 F.2d 353, 354–55 (3rd Cir.1977), *vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154 (1978); *United States v. McMillian*, 535 F.2d 1035, 1037 n. 1 (8th Cir.1976), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States v. Harris*, 530 F.2d 576, 578–579 (4th Cir.1976); *Bryant v. United States*, 417 F.2d 555, 556 n. 2 (D.C.Cir.1969), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1534, 28 L.Ed.2d 866 (1971); *Toles v. United States*, 308 F.2d 590, 594 (9th Cir.1962), *cert. denied*, 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66 (1963).

Affirmed.