**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kathy Evelyn WILLIS, Defendant–Appellant.**

No. 93–5484.

United States Court of Appeals, Fifth Circuit.

Nov. 7, 1994.

Rehearing Denied Dec. 20, 1994.

---

John Kermit Hill, Hill, Ellis, Walker, Hill & Shea, Sherman, TX (court-appointed), for appellant.

Traci L. Kenner, Asst. U.S. Atty., Tyler, TX, Bob Wortham, U.S. Atty., Beaumont, TX, Clifford Stricklin, Sp. Asst. U.S. Atty., Sherman, TX, for appellee.

Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant Kathy Evelyn Willis was convicted on a jury verdict for carrying a firearm during, and in relation to, the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). She now appeals, assigning as error the trial court's exclusion of certain expert testimony concerning the battered woman's syndrome which she contends was relevant to her defense of duress. Also, Willis argues that the trial court erred in denying her motion for acquittal and in instructing the jury on her duress defense. Finding no reversible error, we affirm.

*FACTS AND PROCEDURAL HISTORY*

In the fall of 1992, Officer Debbie Bond, working undercover for the Collin Area Narcotics Task Force, contacted Willis in an attempt to set up a narcotics transaction. The women exchanged pager numbers. On October 20, 1992, Willis paged Bond and arrangements were made to meet at a local restaurant in Plano.

Willis arrived at the restaurant in a maroon Mercury Cougar with a man, later identified as David Perez, in the passenger seat. Willis then got into Bond's car while Perez remained in the Cougar. At that time, Willis sold Bond ¼ pound of marijuana for $375. Also during that transaction, the women discussed a later purchase of approximately ten pounds of marijuana in a couple of days.

The following evening, Willis contacted Bond and set up a meeting on the next day for a transaction involving four pounds of marijuana, which was all that Willis could acquire. This meeting was set for 2:00 p.m. on October 22 at a local Denny's restaurant. Both women said that they would be alone.

Surveillance of the restaurant revealed, however, that Willis arrived with Perez. As an informant had told the police that Perez always carried a gun, the officers decided to wait until Willis and Perez just got nervous and left the restaurant on their own. After about 45 minutes, Willis contacted Bond by phone and Bond made up the story that she had seen a police car pass nearby and that they should meet at a gas station a few blocks away.

Willis testified that when she came back from talking to Bond and told Perez what Bond had said, he replied that the police were already there. Further, according to Willis, Perez took a gun out of his pants and put it into her purse. The couple then proceeded into the parking lot and toward their car.

The police arrested Willis and Perez in the parking lot.[1] Willis made no violent moves to resist the arrest, nor did she make any attempt to get into her purse. Moreover, after she was on the ground and handcuffed, Willis told the officer who subdued her that there was a gun in her purse.[2] The officer then removed a loaded Lorcin .380 semi-automatic pistol from the handbag.[3]

Willis was indicted for carrying a firearm during, and in relation to, the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Subsequently, she was brought before the U.S. Marshal for interrogation. During that interview, Willis signed a statement admitting that she and Perez planned to sell the four pounds of marijuana to Bond at the Denny's. The statement also declared that the gun that was found in her purse belonged to Perez and that he had placed it in her purse as they were leaving the restaurant. Lastly, Willis explained in this statement that Perez had brought the gun to protect the drug transaction but that he did not want to be caught with the gun because he was a convicted felon and was not allowed to possess a firearm.

---

1. After Perez consented to a search of the car, approximately 4 lbs. of marijuana were found in the vehicle.

2. The officers expressed surprise that Willis, and not Perez, was carrying a gun.

3. While being transported to jail, Willis made several statements to Officer Mike Johnson. Using his written report to refresh his memory, Officer Johnson testified that Willis asserted that the dope was all hers and that David Perez had nothing to do with it. Further, she told Johnson that she was only doing this to pay her bills. Finally, Willis stated that she "could have pulled a gun and blown a couple of you SWAT motherfuckers' heads off."

At trial, Willis raised the defense of duress. She related that she greatly feared Perez because of the beatings she had received at his hands in the past. Accordingly, Willis argued that she believed that if she had protested when he put the gun in her purse, he would have beaten her right there in the restaurant. As a result of this fear, Willis contended that she did not knowingly, intentionally or voluntarily carry or use the firearm, but rather did so only under duress.

The district court permitted Willis substantial latitude in introducing evidence to support her theory that she was actually in fear for her life when she committed the acts in question. Six witnesses, including two Dallas police officers, were called to testify about Perez's violent nature and Willis' fear of him. In addition, Willis called Dr. James Harrison, a clinical psychologist, to testify as to his conclusions and evaluations regarding Willis. Harrison testified that Willis had been the victim of a pattern of abuse that had its origin in a dysfunctional family wherein both of Willis' parents were alcoholics. This led to abuse by both Willis' mother and a series of stepfathers. This pattern of abuse continued through two marriages[4] to abusive men and escalated during the violent relationship with David Perez.

In addition to testifying about specific acts of violence against Willis, Harrison testified about her mental state. He stated that Willis was in a great deal of emotional turmoil and showed signs of anxiety and depression. Moreover, she was constantly experiencing tension due to a strong desire to be loved and a very intense fear that she might be harmed or humiliated in a relationship. Accordingly, Dr. Harrison testified that Willis' relationships fell into a very clear sort of classical

pattern of a battered woman syndrome and an abusive relationship.

The prosecution objected to this testimony, however. The district court sustained this objection and instructed counsel that it would not hear any more testimony about the battered woman's syndrome.[5] Even so, Dr. Harrison did go on to testify that Willis was terribly afraid of Perez and would basically do anything that he wanted so as to keep any further violence away.

The district court instructed the jury on the defense of duress. The jury rejected this defense, though, and found Willis guilty of the charged offense. Accordingly, the district court sentenced Willis to the mandatory sentence of five years' imprisonment required under 18 U.S.C. § 924(c)(1) followed by a two-year period of supervised release. Willis timely appealed.

### DISCUSSION

### I. DURESS AND THE BATTERED WOMAN'S SYNDROME

Willis' main argument on appeal is that the district court erred in excluding Dr. Harrison's testimony concerning the battered woman's syndrome in connection with her defense of duress. We review a district court's exclusion of expert testimony for an abuse of discretion. *United States v. Triplett*, 922 F.2d 1174, 1182 (5th Cir.), *cert. denied*, 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991). Even if abuse is found, the error may be harmless. The test is "whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the additional evidence inserted." *United States v. Roberts*, 887 F.2d 534, 536 (5th Cir.1989), quoting *United States v. Lay*, 644 F.2d 1087, 1091 (5th Cir. Unit A), *cert. denied*, 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981).

**4.** The first marriage lasted seven years and the other marriage lasted 15. Willis had been together with Perez for approximately two years before the actions involved herein.

**5.** An offer of proof was made after the close of the defendant's case. In this offer of proof, Dr. Harrison described the criteria for determining when a person could be trapped in an abusive relationship and that it was his opinion that Willis fit into those patterns. He explained that

women suffering from this syndrome feel themselves to be helpless to prevent any of the abuse and to be trapped in the abusive situation. As Dr. Harrison found Willis to be suffering from this syndrome, he opined that it probably did not even occur to Willis that she could have refused to accept the gun from Perez because she had already reached the point where she did what was expected of her by Perez.

■ The argument made by Willis herein compels this Court to consider the place of battered woman syndrome evidence to a duress defense to criminal liability. The duress defense is a common law concept that federal criminal law has incorporated. *See United States v. Bailey,* 444 U.S. 394, 409–10, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980). Under this defense, otherwise criminal behavior may be excused under narrow circumstances. To succeed with this defense, the defendant must show:

1. that the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

2. that the defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to choose the criminal conduct;

3. that the defendant had no reasonable legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

4. that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*United States v. Liu,* 960 F.2d 449, 453 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992); *United States v. Harper,* 802 F.2d 115, 117 (5th Cir.1986); *United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982).

■ These requirements are addressed to the impact of a threat on a reasonable person. The fear of death or serious bodily injury must be "well-grounded." There must be no "reasonable" alternative to violating the law. This objective formulation is in harmony with the analysis of duress in the *Model Penal Code* which recognizes duress as a defense if the threat of the use of unlawful force is such "that a person of reasonable firmness in his [or her] situation would have been unable to resist." American Law Institute, *Model Penal Code* § 2.09(1) (1985); *see also Gant,* 691 F.2d at 1161–62, n. 3.

■ Evidence that the defendant is suffering from the battered woman's syndrome is inherently subjective, however. Such evidence is not addressed to whether a person of reasonable firmness would have succumbed to the level of coercion present in a given set of circumstances. Quite the contrary, such evidence is usually consulted to explain why this particular defendant succumbed when a reasonable person without a background of being battered might not have. Specifically, battered woman's syndrome evidence seeks to establish that, because of her psychological condition, the defendant is unusually susceptible to the coercion. Thus, the issue we face today is whether it was error to exclude such subjective evidence.

This issue was thoroughly explored by the Ninth Circuit in the case of *United States v. Johnson,* 956 F.2d 894 (9th Cir.) *supplemented on denial of reh'g sub nom. U.S. v. Emelio,* 969 F.2d 849 (9th Cir.1992). In *Johnson,* several women were convicted for functioning as low-level operatives in a large drug operation. They appealed arguing that the evidence that they were battered women was not properly taken into account as to both their convictions and their sentences. The appellate court upheld all of their convictions, however. *Id.* at 907. In so doing, the court recognized that the classical elements of duress are stated in objective terms. Further, the court noted that, as a defense to a charge of criminal conduct, claims of subjective vulnerability have not been taken into account. *Id.* at 898. Accordingly, the *Johnson* court found that subjective evidence of the battered woman's syndrome could not be taken into account in determining criminal liability and thus could not upset the convictions.[6] *Id.*

The *Johnson* court found a distinction, however, in the treatment of subjective evi-

---

6. Of particular relevance to the case at bar is the court's treatment of the claims of defendant Breck in the *Johnson* case. Breck testified that she fit the pattern of a battered woman because she was so terrified of the leader of the drug operation, Daniel Longoria, that she was psychologically dominated. Even so, the district court denied her the right to call an expert witness to testify concerning the battered woman's syndrome and refused to give her requested instruc-

dence for purposes of duress between criminal liability and criminal sentencing. While concluding that evidence of the particular susceptibility of battered women could not be taken into account in determining criminal liability, the court found that such evidence could be taken into account for purposes of criminal sentencing. *Id.* For support, the court looked to the Federal Sentencing Guidelines which specifically provide for the possibility of downward departure if the defendant

> "committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense .... The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances *as the defendant believed them to be.*"

U.S.S.G. § 5K2.12 (emphasis added). As the italicized portion of this section provides that the perceptions of the particular defendant are to be taken into account, the *Johnson* court determined that, for purposes of sentencing, a court was not limited to the objective duress formulation. Instead, it could consider subjective factors such as evidence on the special vulnerability of those suffering from the battered woman's syndrome. *Johnson,* 956 F.2d at 898. Therefore, the *Johnson* court remanded the sentences of the defendants before it for reconsideration in light of those subjective factors. *Id.* at 907.

A similar approach to the treatment of evidence that the defendant was unusually susceptible to the coercion was taken by the Second Circuit in *United States v. Smith,* 987 F.2d 888 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 209, 126 L.Ed.2d 165 (1993). In that case, Smith, who was indigent, requested funds for a psychiatrist to assist in the development of his duress defense. The district court denied that request, however, finding that even if the expert testified as to

Smith's unusual susceptibility, such testimony would be irrelevant as the standard for duress is objective. The Second Circuit agreed with the district court that, as a defense to criminal liability, duress requires an objective showing. *Id.* at 890. Thus, the appellate court held that the expert's testimony would be irrelevant for that purpose. *Id.* at 890–91. Even so, the Second Circuit found that funds for the expert should have been approved because testimony that the defendant was unusually vulnerable would have been relevant at sentencing and the expert might have been able to testify as to *other* matters at the trial on criminal liability. *Id.* at 891.

In the case at bar, Willis has not argued before this Court that the evidence that she was a battered woman was not properly taken into account in the calculation of her sentence. Thus, the issue that we face today is limited to the relevance of this evidence to her duress defense to her criminal liability.

Like the *Johnson* and *Smith* courts, we hold that such evidence is not relevant. This is because in order for a duress defense to criminal liability to succeed, the coercive force of the threat must be sufficient such that a person of *ordinary* firmness would succumb. *Model Penal Code* § 2.09. Additionally, there must be no *reasonable* legal alternative to violating the law. *Gant,* 691 F.2d at 1163–64; *Bailey,* 444 U.S. at 411, 100 S.Ct. at 635. These requirements set out an objective test. To consider battered woman's syndrome evidence in applying that test, however, would be to turn the objective inquiry that duress has always required into a subjective one. The question would no longer be whether a person of ordinary firmness could have resisted. Instead, the question would change to whether this individual woman, in light of the psychological condition from which she suffers, could have resisted. In addition to being contrary to settled duress law, we conclude that such a change

tion on duress. The appellate court upheld these rulings. It determined that Breck, who had worked for Longoria for some time, had failed to make out a prima facia case of duress because she had not shown that she could not have far earlier escaped Longoria, as she in fact finally

did. *Id.* at 902. Moreover, the Ninth Circuit held that the exclusion of the expert's testimony was correct because such testimony, "going to [Breck's] special subjective vulnerability, would not have established the lack of opportunity to escape that the defense of duress requires." *Id.*

would be unwise. Accordingly, while evidence that a defendant is suffering from the battered woman's syndrome provokes our sympathy, it is not relevant, for purposes of determining criminal responsibility, to whether the defendant acted under duress.[7] *See United States v. Sixty Acres in Etowah County,* 930 F.2d 857, 861 (11th Cir.1991) (battered woman's generalized fear of her abuser, though genuine ("and profound,") "provokes" our sympathy, but cannot provoke the application of "legal standard [of duress] whose essential elements are absent").

■ Turning to the facts of the instant case, we note that the district court allowed into evidence all of the objective evidence of Willis' fear of Perez, including testimony as to Perez's violent nature and all of the specific instances of abuse she had suffered at Perez's hands.[8] By contrast, the expert testimony that was excluded dealt with Willis' subjective perceptions stemming from the battered woman's syndrome. As we have concluded that such subjective evidence is irrelevant, there was no abuse of discretion in excluding that evidence. *See Triplett,* 922 F.2d at 1183.

7. In support of her argument that the testimony of Dr. Harrison regarding the battered woman's syndrome should be relevant in this case, Willis cites the appellate cases of *Arcoren v. United States,* 929 F.2d 1235 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991) and *Dunn v. Roberts,* 963 F.2d 308 (10th Cir. 1992). Neither of these cases is contrary to the position we take today, however.

In *Arcoren,* the issue was not whether battered woman's syndrome evidence was relevant in determining the criminal liability of a defendant claiming duress. Instead, the issue was whether such evidence could be introduced before a jury to explain why a fact witness recanted her grand jury testimony. *Arcoren,* 929 F.2d at 1240. The court determined that it could be introduced for that purpose. *Id.* at 1241. We do not find this holding to be contrary to the holding we make today. Thus we do not find this case to be contrary authority.

Neither do we find the *Dunn* case to be contrary authority. In *Dunn,* the Tenth Circuit specifically did not address the Kansas Supreme Court's conclusion that battered woman's syndrome evidence would have been irrelevant to defendant's *defense* of duress. *Dunn,* 963 F.2d at 312, n. 2. Instead, the Tenth Circuit found such evidence relevant by focusing on the fact that the defendant was charged with the crime of aiding

## II. THE MOTION FOR ACQUITTAL

■ The jury found Willis guilty of a violation of 18 U.S.C. § 924(c)(1), which states:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ....

It is not necessary for the government to prove, in order to obtain a conviction under this section, "that the weapon involved was actually used to harm, intimidate, or threaten others." *United States v. Boyd,* 885 F.2d 246, 250 (5th Cir.1989). Instead, "[i]t is enough that the firearm was present at the drug-trafficking scene, that the weapon could have been used to protect or facilitate the operation, and that the presence of the weapon was in some way connected with the drug trafficking." *Id.*

■ Willis contends that no evidence was presented to show that she carried or used a firearm during or in relation to a drug trafficking offense. Hence, Willis argues on

and abetting. Since aiding and abetting is a specific intent crime, the prosecution had to prove in its case-in-chief that the defendant had the specific mental objective to aid in committing the crime. *Id.* at 313. In that context, the court found that battered woman's syndrome evidence could be relevant to attack the prosecution's evidence of specific intent. *Id.* at 314. Whatever the merits of this conclusion, it does not conflict with our conclusion in the instant case that in the context of duress as an affirmative defense to criminal liability, subjective evidence of the battered woman's syndrome is not relevant.

8. In determining whether the elements of duress are met, the fact-finder may take into account the objective situation in which the defendant was allegedly subjected to duress. In addition to the immediate circumstances of the crime, this would include evidence concerning the defendant's past history with the person making the unlawful threat. In order to successfully make out this defense, a defendant must show, among other things, that her fear is well-grounded. *United States v. Webb,* 747 F.2d 278, 285 (5th Cir.1984) *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). A fear that seems irrational when viewed only in light of the immediate circumstances may be well-grounded if the defendant's experience with the person applying

appeal that the district court erred in failing to grant her motion for acquittal. Normally, the standard of review on a motion for judgment of acquittal is whether, "viewing the evidence and the inferences therefrom in the light most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Raborn*, 872 F.2d 589, 594 (5th Cir.1989), quoting *United States v. Trevino*, 720 F.2d 395, 398 (5th Cir.1983). However, because defense counsel failed to renew his motion for acquittal at the close of all evidence as is required by Fed.R.Crim.P. 29, we review only for plain error. *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir.1992).

■ The argument that Willis advances is based on the premise that the fact that Perez put the gun in her purse showed that there was, at that time, no longer an intent to distribute the marijuana in question. The drug transaction had been aborted and Perez and Willis only sought to leave. Hence, Willis argues that her possession of the gun after that time could not be in relation to the drug trafficking offense as it had ended. Moreover, Willis argues that Perez's purpose in placing the gun in her purse was not to facilitate the drug transaction, but rather for Perez to avoid being caught with the gun.

Willis' argument fails because her premise is faulty. A criminal may not simply announce that a drug transaction is over when he discovers that the police are closing in for an arrest. Hence, the drug transaction had not ended when she concedes to having received possession of the gun.

■ Willis set up this drug transaction. As Willis admitted, the gun was brought to the restaurant in order to protect that transaction. Finally, her possession of the gun as she and Perez exited to the parking lot brought with it all of the dangers of a shootout with the police.[9] Viewing these facts in a light most favorable to the government, a reasonable trier of fact could easily conclude beyond a reasonable doubt that Willis used or carried a firearm in relation to a drug trafficking offense. Therefore, there was no error, much less plain error, in denying Willis' motion for acquittal.[10]

## III. THE JURY INSTRUCTION ON DURESS

The district court gave the following instruction to the jury in regards to Willis' defense of duress:

It is the theory of the Defense in this case that although the Defendant may have committed the acts charged in the indictment, she did not do so voluntarily, but only because of force or coercion in the form of intimidation, threats and fear of bodily harm to herself.

In order to excuse an act that would otherwise be criminal, however, the Defendant must show the following:

One, that she was under a present, imminent or impending threat of death or serious bodily injury.

Two, that she had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to choose the criminal conduct in question.

the threat is such that she can reasonably anticipate being harmed for her failure to comply.

9. Indeed, she bragged to the officers that she could have blown their heads off.

10. In connection with this point of error, Willis also claims that her trial counsel was constitutionally ineffective because he did not renew Willis' motion for acquittal at the close of all evidence. To succeed with a claim of ineffective assistance of counsel, Willis would have to show that 1) her trial counsel's performance was deficient, and 2) that the deficient performance prejudiced her rights. *Strickland v. Washington*, 466

U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "If proof of one element is lacking, the court need not examine the other." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 285 (5th Cir. 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). In order to prove the prejudice prong of the *Strickland* test, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Rosalez–Orozco*, 8 F.3d 198, 199 (5th Cir.1993) (interior quotation mark omitted.). In the instant case, as the evidence was sufficient to support the conviction, a renewed motion for acquittal would not have

Three, that she had no reasonable opportunity to escape from the situation and avoid the threatened harm.

And four, that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

These are the elements which the Defendant must show in order to prevail on her defense that she was justified in committing the offense because of duress. Remember, however, that it is the burden of the Government to prove the Defendant guilty of the offense charged in the indictment beyond a reasonable doubt.

Rec., Vol. 5 at 344–45. Willis attacks this instruction in two arguments.

The first argument is easily dispatched. Willis contends that the district court erred when it included the second of the four prongs of its duress instruction. She notes that this element is lacking from the duress formulations of several other circuits [11] and thus she argues that it was error to include it.

However, the duress instruction given by the district court herein was drawn directly from circuit precedent. Whatever the practice in other circuits, this element is clearly one of the elements of duress as developed by the prior opinions of this Court. *United States v. Liu*, 960 F.2d 449, 453 (5th Cir. 1992); *United States v. Harper*, 802 F.2d 115, 117 (5th Cir.1986); *United States v. Gant*, 691 F.2d 1159, 1162 (5th Cir.1982). The district court was not free to ignore precedent and excise this element from this Circuit's duress formulation and neither are we. Accordingly, Willis' argument fails.

■■■■ The second argument that Willis makes to establish that the district court's instruction was improper relates to the burden of proof. In reviewing a claim of error in the jury instructions, we note that a dis-

trict court is afforded "substantial latitude in formulating its instructions." *United States v. Chaney*, 964 F.2d 437, 444 (5th Cir.1992). To determine whether there was error, this Court looks at "the entire charge in the context of the trial including arguments made to the jury." *United States v. Fotovich*, 885 F.2d 241, 242 (5th Cir.1989), *cert. denied*, 493 U.S. 1034, 110 S.Ct. 754, 107 L.Ed.2d 770 (1990). In the instant case, however, our review is limited to plain error as Willis did not properly object to this instruction. Fed.R.Crim.P. 52(b); *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1350 (5th Cir.1988).

■■■ Since a justification defense such as duress is an affirmative defense, the burden of proof is on the defendant. *Gant*, 691 F.2d at 1165. To succeed, the defendant must prove each element of the defense by a preponderance of the evidence.[12]

■■■ In this case, Willis contends that the instruction was erroneous because it did not state that the burden of proof on the defendant was a preponderance of the evidence. The only burden of proof mentioned, Willis continues, is the caution at the end of the instruction which is worded as follows: "[r]emember ... it is the burden of the Government to prove the Defendant guilty of the offense charged in the indictment beyond a reasonable doubt." Rec., Vol. 5 at 345. This reminder, Willis argues, only served to confuse the jury because it might have made the jury believe that the burden on Willis, as well as on the government, was beyond a reasonable doubt.

We do not find this instruction as confusing as does Willis. It is quite possible that the jury noted the contrast between the government's burden of proof of beyond a reasonable doubt and the conspicuous absence of a reasonable doubt standard as applied to the defendant's burden to show duress. In any

been successful. Thus, Willis' claim of ineffective assistance of counsel fails.

**11.** *See, e.g., United States v. Beltran–Rios*, 878 F.2d 1208, 1213 (9th Cir.1989); *United States v. Polanco–Gomez*, 841 F.2d 235, 238 (8th Cir. 1988); *United States v. Mitchell*, 725 F.2d 832, 837 (2d Cir.1983).

**12.** In *United States v. Dominguez–Mestas*, 929 F.2d 1379, 1384 (9th Cir.), *cert. denied*, —— U.S.

——, 112 S.Ct. 419, 116 L.Ed.2d 440 (1991), the court concluded that the defendant bore the burden of proving the elements of the defense of duress by a preponderance of the evidence. In part, this was because "[t]o require the government to prove beyond a reasonable doubt the absence of duress would create a standard that would be nearly impossible to satisfy." *Id.*

case, while this instruction may not have been as clear as defendant would have liked, we are unable to conclude that it was so confusing as to constitute plain error. *See U.S. v. Cartwright*, 6 F.3d 294, 302 (5th Cir.1993), petition for cert. filed (July 19, 1994) No. 94–5410.[13]

### CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

**13.** During deliberations, the jury sent out a note which stated: "Must the Defendant show all four items listed [in the duress instruction] or may the Defendant only need to show one or two or three of the items?" Rec., vol. 5 at 350–51. The district court replied: "The Defendant must show all four elements listed. The jury is instructed to consider all of the instructions that I have given you." *Id.* at 351. Willis contends that this answer compounded the burden of proof error. However, we conclude that the

answer to the note was correct. Duress is an affirmative defense and the burden is on the defendant to prove all four elements. Even if the instruction was, to some extent, misleading, there is nothing in the answer to the note that would add to the confusion. Thus, there was no error in the answer given by the district court to the jury's note.

