United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-10250
_____

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

                    versus

KESHIA CHERIE ASHFORD DIXON,

                              Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before REAVLEY, JOLLY, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case may have added interest because the defendant introduced evidence concerning battered woman's syndrome as part of her duress defense. Otherwise, this appeal is unremarkable. The appellant, Keshia Cherie Ashford Dixon, was convicted of one count of receiving a firearm while under indictment and eight counts of making a false statement to purchase a firearm.[1] In appealing the conviction, she contends that the district court erred in: (1) refusing to permit expert testimony in support of her defense of duress; (2) excluding as hearsay an out-of-court statement made by her former boyfriend to an ATF agent; and (3) instructing the jury

_____

[1] See 18 U.S.C. §§ 922(n) and 922(a)(6).

that she bore the burden of proving her defense of duress by a preponderance of the evidence. We find no reversible error, and thus AFFIRM.

I

Two Dallas gun shows are the situs of the crime. The relevant facts, occurring in January 2003, are largely undisputed. At both of the gun shows, Dixon purchased multiple firearms by providing false information to dealers. In particular, she provided an incorrect address and stated that she was not under indictment for a felony, when in fact she had been indicted for her role in a check cashing scheme. In each instance, the dealer ran Dixon's information through the National Instant Criminal Background Check System, received a "proceed" response, and sold Dixon the gun.

At trial, Dixon attempted to raise a defense of duress, claiming that she had been coerced into purchasing the guns by her boyfriend, Thomas Earl Wright, and an associate, Hookie Sanders. Both Wright and Sanders were convicted felons, so neither could purchase the guns directly. Each of the gun dealers testified that Dixon was accompanied by several men while at the gun shows, but that they did not seem to be controlling her purchases.

Dixon testified that she had been abused by Wright, who allegedly beat her on a regular basis and threatened her children. Her description of the relationship was largely corroborated by the testimony of her two daughters. Dixon further testified that she

2

was afraid that, if she did not buy the guns for Wright, he would harm or even kill her or her daughters.

In support of her duress defense, Dixon attempted to introduce the testimony of Dr. Toby Myers, a domestic violence expert, regarding the reactions of battered women to their abusers. The court held that Dr. Myers's testimony addressed Dixon's subjective state of mind and was therefore inadmissible to show duress. Dixon also attempted to introduce the testimony of Kelly Oates, an agent with the Bureau of Alcohol, Tobacco and Firearms, concerning an out-of-court statement by Wright that he gave Dixon $115 to purchase a gun for him. The district court excluded Oates's testimony as inadmissible hearsay.

The jury convicted Dixon on all nine counts.

## II

On appeal, Dixon contends that the district court erred in three respects: (1) in refusing to admit Dr. Myers's expert testimony; (2) in excluding Wright's out-of-court statement as inadmissible hearsay; and (3) in giving a jury instruction that placed the burden of proving duress by a preponderance upon the defendant.

## A

We first consider whether the district court erred in excluding Dr. Myers's testimony concerning the psychological effects of Wright's battery of Dixon. We review a district court's decision to exclude expert testimony only for abuse of discretion.

3

See, e.g., United States v. Krout, 66 F.3d 1420, 1426 (5th Cir. 1995).

Expert testimony is admissible if (1) it will assist the trier of fact to understand the evidence or to determine a fact in issue; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. In the case at bar, neither Dr. Myers's data nor her methodology have been challenged. The narrow question raised by Dixon is whether the district court abused its discretion in holding that Dr. Myers's testimony would not have assisted the jury in making a determination as to a material fact.

Dixon sought to introduce Dr. Myers's expert testimony in support of a defense of duress. Duress is an affirmative defense that has been developed through the common law and adopted by the federal courts. See United States v. Bailey, 444 U.S. 394, 409-10 (1980). To succeed on a duress defense, this court requires that the defendant show:

> 1. that [she] was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> 2. that [she] had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to choose the criminal conduct;
>
> 3. that [she] had no reasonable legal alternative to violating the law, a chance

4

> both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> 4. that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

United States v. Willis, 38 F.3d 170, 175 (5th Cir. 1994); (quoting United States v. Liu, 960 F.2d 449, 453 (5th Cir. 1992)). Whether apprehension is "well-grounded" turns on whether "a person of reasonable firmness in [the defendant's] situation would have been unable to resist" the threat. Id. (quoting AMERICAN LAW INSTITUTE, MODEL PENAL CODE § 2.09(1) (1985)). In short, the duress defense requires an objective inquiry into whether a defendant's conduct, although illegal, represented her only reasonable alternative to serious bodily injury or death.

1

Most of the expert testimony proffered in this case, like that in Willis, dealt with the defendant's subjective vulnerability to coercion. In Willis, we held that expert testimony that a defendant "suffers from the battered woman's syndrome" is "inherently subjective" and therefore inadmissible to support a defense of duress. Id. at 175, 177. In the case at bar, although Myers carefully avoided using the term "battered woman's syndrome", she nonetheless explained that Dixon was "more vulnerable because she had lost her job" and that Dixon "didn't think [calling the police] would do any good". Dr. Myers concluded that, as a result of Wright's threats and repeated battery, Dixon believed "in her

5

heart and mind [that] she didn't have a choice" as to whether to buy the guns. In short, this testimony clearly focuses on Dr. Myers's opinions as to Dixon's individual state of mind.

To the extent that Dr. Myers's proffered testimony described Dixon's subjective perceptions of danger, it was not relevant to the inquiry at hand -- that is, to whether such perceptions were "well-grounded" or objectively reasonable under the circumstances. As such, it could not have "assist[ed] the trier of fact" in making any determination of material fact. See FED. R. EVID. 702. Thus, we hold that the district court did not err in excluding this portion of Dr. Myers's testimony.[2]

2

Our analysis does not end here, however. Dixon contends that Dr. Myers's proffer did not focus exclusively on subjective

_____

[2] Furthermore, Dr. Myers's assertion that Dixon's fears were reasonable does not redeem her testimony. Whether a defendant's apprehension of harm is reasonable under the circumstances is ultimately a question for the jury. Although it is certainly possible that expert testimony might shed light on the reasonableness of a given type of conduct by describing typical reactions to unusual circumstances, such was not the case here. Instead, at the prompting of counsel, Dr. Myers offered the wholly conclusory assertions (1) that Dixon's fear of Wright was "well grounded" and (2) that her decision not to leave Wright was not "reckless or negligent".

These statements represent a transparent strategy to distinguish Dr. Myers's testimony from that which was excluded in Willis by inserting brief, perfunctory "objective" characterizations into testimony that otherwise focuses exclusively on the defendant's subjective perceptions. If the rule announced in Willis -- i.e., that expert testimony as to a defendant's subjective beliefs is inadmissible to show duress -- were so easily swept aside, it would be meaningless.

6

perceptions. Rather, Dixon argues, the proffer included a significant amount of "'objective' testimony that would show that [Dixon's] fear ... was well-grounded in her history and experience with Wright". Although it is not altogether clear to us what Dixon means by "objective testimony", the record suggests that the term refers to testimony by Dr. Myers as to the facts of Dixon's relationship with Wright.[3]

Such testimony, Dixon contends, would be based upon, inter alia, "interviews with Dixon's mother and daughters, statements from Wright and Sanders to the government" and "the testimony of ... Jocelyn Dixon". In short, it would be inadmissible hearsay. See FED R. EVID. 802-804. Dixon points out that the facts upon which an expert opinion are based "need not be admissible in evidence in order for the opinion or inference to be admitted". FED. R. EVID. 703; see also United States v. Williams, 447 F.2d 1285, 1290 (5th Cir. 1971)(en banc). The inverse of this statement, however, is not true. Where, as here, an expert's opinion testimony is inadmissible, the hearsay upon which that opinion is based is also

---

[3] Another type of expert testimony that may be termed "objective" is that which describes the typical patterns, circumstances and effects of battery within an abusive relationship without attempting to draw any conclusions therefrom as to the subjective perceptions of a particular defendant. Since Willis was decided, various courts have recognized a distinction between such generalized testimony and "subjective" expert testimony that effectively diagnoses a particular defendant as suffering from battered woman's syndrome. See, e.g., State v. Grecinger, 569 N.W.2d 189, 196-97 (Minn. 1997); Scugoza v. State, 949 S.W.2d 360, 363 (Tex. App. San Antonio 1997); State v. Stringer, 879 P.2d 1063, 1069 (Mont. 1995).

inadmissible.  Were it otherwise, designation as an "expert" would permit any such witness -- regardless of her qualification or the relevance of her testimony -- to escape the ambit of the hearsay rules.

Thus, in view of the inadmissibility of Dr. Myers's opinion testimony, she is not a competent witness to testify as to facts of Dixon's relationship with Wright based solely on what others told her.  We therefore hold that the district court did not abuse its discretion in excluding such testimony.

B

Dixon next argues that the district court erred in excluding, as inadmissible hearsay, potentially inculpatory statements made by Wright to Agent Oates.  Shortly after his arrest, Wright told Oates that he and an associate had given Dixon $115 to purchase a .380 semiautomatic pistol for them, and had done so because they were convicted felons and could not buy the guns themselves.  Dixon acknowledges that Oates's testimony concerning the statement is hearsay, but contends that it is nonetheless admissible as a statement against interest.  See FED. R. EVID. 804(b)(3).

The hearsay exception for statements against interest applies only where (1) the declarant is unavailable; (2) the statement tends to subject the defendant to criminal liability, such that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its

8

trustworthiness. See United States v. Sarmiento-Perez, 633 F.2d 1092, 1101 (5th Cir. 1981). The district court assumed that Wright would refuse to testify, given the potentially incriminating nature of his statement. As such, the admissibility of Oates's hearsay testimony turned exclusively on whether Wright's admission was corroborated by circumstances indicating its trustworthiness.

We will uphold a determination as to the trustworthiness of an out-of-court statement "unless it is clearly erroneous". United States v. Vega, 221 F.3d 789, 803-04 (5th Cir. 2000). In this case, the district court based its decision to exclude Oates's testimony, in part, on a major inconsistency between Wright's account of events and Dixon's. Although Wright admitted in his statement to Oates that he gave Dixon money to purchase a gun for him, he also asserted that he went to the gun shows "at Dixon's request" to "show her which ones to purchase because she didn't know anything about guns". This directly contradicts Dixon's account, in which Wright and Sanders physically coerced her into going to the gun show with them.

The discrepancy between the two accounts goes to the very heart of the duress defense -- that is, whether Dixon bought the guns under threat of violence. Thus, while Dixon contended that she acted under duress, she sought to introduce a statement that indicated she acted willingly and voluntarily. Faced with such a fundamental inconsistency, the district court did not err in excluding the statement.

C

Finally, Dixon contends that the district court erred in instructing the jury that she, as the defendant, bore the burden of proving her duress defense by a preponderance of evidence.  Our circuit's law is clear on this point: "Since a justification defense is an affirmative defense, the burden of proof is on the defendant.  To succeed, the defendant must prove each element of the defense by a preponderance of the evidence."  <u>Willis</u>, 38 F.3d at 179.  As such, Dixon's contention is meritless.

III

For the foregoing reasons, the conviction is AFFIRMED.

10